UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TYRONE C. BATEMAN, | ) |
| Petitioner, | ) |
| vs. | ) Case No:  1:18CV100 HEA |
| JASON LEWIS, | ) |
| Respondent. | ) |

# OPINION, MEMORANDUM AND ORDER

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No.1] on April 30, 2018. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted [Doc. No. 6] on August 27, 2018. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons explained below, the Response to the Order to Show Cause Why Relief Should not be Granted is well taken and the petition will be dismissed.

## Procedural Background

Petitioner was found guilty of first-degree murder and armed criminal action in the shooting death of his cousin in the Circuit Court for the City of St. Louis. He was sentenced to consecutive terms of life without parole and ten years'

imprisonment in the Missouri Department of Corrections. Petitioner appealed his conviction and sentence to the Missouri Appellate and Supreme Courts. The Missouri Supreme Court summarized the relevant facts in its Opinion affirming the conviction and sentence:

> The evidence shows that Tyrone and Miles Bateman were cousins living on the same street. After a night out together, Miles slept at Tyrone's house. When Miles awoke the next morning, he discovered Tyrone had borrowed his van and some amount of money. Tyrone later returned the van without gas. The money was not returned. Tyrone left a pair of shoes or boots in the van, which Miles kept until he could collect the missing money from Tyrone. A few days later, on March 21, 2005, Miles was repairing a flat tire in front of his mother's house, where he lived, when Tyrone drove up with a mutual friend to retrieve the shoes. When Miles refused to give back the shoes until Tyrone returned his money, an argument ensued and escalated into a physical confrontation. Tyrone struck or grabbed Miles, who then retaliated by hitting Tyrone in the head with the jack handle he was holding. Tyrone's head began to bleed profusely, and the two wrestled on the ground until the fight was broken up by Miles' mother. Tyrone told Miles, "...[W]hen you get off me, I'm going to hurt you real bad." Miles went into his house and then the bathroom to wash his face.
>
> Tyrone returned to his car and drove in reverse down a one-way street. Upon reaching his house, Tyrone retrieved a shotgun. Tyrone then returned to Mile's house, kicked down the front door and shot Miles once in the area of his left chest. Tyrone did not try to help Miles or seek medical attention for him after the shooting. Instead, he got back into his car and drove away, exclaiming, "I got him. I got him."
>
> During subsequent search of Tyrone's house police recovered a shotgun and shell consistent with the gun used to shoot Miles. Miles died as a result of the injuries inflicted by the gunshot. Police later apprehended Tyrone at an apartment where he was partially

hidden in the closed of a child's bedroom. Tyrone resisted arrest so aggressively that police subdued him with a Taser.

(Respondent's Exhibit E, pp. 3-4).

Petitioner filed a *pro se* motion for post-conviction relief on October 28, 2010. Petitioner was then appointed counsel, who filed an amended motion for post-conviction relief on February 4, 2011. In his amended post-conviction motion, Petitioner alleged that: 1) trial counsel was ineffective in failing to present the defense of diminished capacity via Dr. Thomas Blansett, a licensed psychologist who was available to testify; 2) counsel was ineffective for failing to properly advise him that the decision whether to testify was his to make and had he testified, there was a reasonable probability that the outcome would have been different. The motion court denied Petitioner's request for an evidentiary hearing and denied Petitioner's motion for post-conviction relief.

Petitioner appealed the motion court's denial. On appeal of the post-conviction denial, the Missouri Court of Appeals denied his appeal.

In this proceeding Petitioner essentially raises three grounds for relief. In Ground One, he asserts that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient as to guilt of first-degree murder. In Ground Two, Petitioner alleges the trial court erred in overruling his objection to the prosecutor's peremptory strike of an African American venireperson because the strike was due to his race. In Ground Three, Petitioner

alleges that trial counsel was ineffective for failing to present testimony from Dr. Blansett in support of a diminished capacity defense. In Ground Four, Petitioner claims trial counsel was ineffective for failing to allow Petitioner to testify on his own behalf.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively

unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## Statute of Limitations

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus. That window opens at the conclusion of direct review. The window closes a year later. Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

**Discussion**

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Here, Plaintiff states four grounds for relief

Ground One – Insufficient evidence

The Missouri Supreme Court concluded that the evidence at trial allowed the jury to infer deliberation:

> While this evidence may have permitted the jury to determine that he shot and killed his cousin in the heat of anger or passion, it did not require the jury to reach this determination. The evidence was sufficient to support the jury's determination beyond a reasonable doubt that he shot and killed Miles after deliberation, that is, after cool reflection, "no matter how brief."
>
> In particular, the state presented evidence that the fighting between Tyrone and Miles stopped once Mile's mother separated them and Miles retreated into the house. Tyrone, therefore, had ample opportunity to terminate the confrontation. *State v. Norman*, 243 S.W.3d 466, 470 (Mo. App. 2007) (deliberation may be inferred when a perpetrator has ample opportunity to terminate the crime). Instead, Tyrone threatened Miles, saying, "I'm going to hurt you real bad." *State v. Overkamp*, 646 S.W.2d 733, 737 (Mo. 1983) ("Previous threats by the accused to kill the deceased are admissible to show malice and premeditation or state of mind"). Tyrone then got in his car and drove home. Rather than staying in this safe location, Tyrone got his gun and drove back to the scene of the altercation. Such a "time lapse between the threat and the shooting would have established a period of deliberation." *Rhodes v. State*, 157 S.W.3d 309, 313 (Mo. App. 2005). "Where the defendant commits a murder which, because of the particular method of attack, required some time to complete, this Court has permitted an inference of deliberation." *O'Brien*, 857 S.W.2d at 219.

> Tyrone's choice not to return empty-handed but to bring a
> deadly weapon with him as he went back to confront his cousin
> also supports the jury's finding of deliberation. *State v. Stacy*, 913
> S.W.2d 384, 387 (Mo. App. 1996) (bringing a deadly weapon to the
> commission of a crime supports a finding of deliberation). Tyrone
> then kicked down his cousin's front door and fired his shotgun
> directly at Miles from only 3 to 5 yards away. The shot caused
> serious injury to Miles' left lung and major blood vessels of the left
> shoulder. It fractured facial bones, causing a disfiguration of Miles'
> chin. Instead of calling for help when he saw how seriously Miles
> was injured, Tyrone fled the scene while exclaiming, "I got him. I
> got him." [F]ailure to seek medical help for a victim strengthens
> the inference that the defendant deliberated." *State v. Strong*, 142
> S.W.3d 702, 717 (Mo. banc 2004). There was substantial evidence from
> which a reasonable juror could find the element of deliberation beyond a
> reasonable doubt.

(Respondent's Exhibit E), pp. 9-10.  Petitioner fails to show that the reasoning of the Missouri Supreme Court was unreasonable.  The Court articulated its rationale based upon applicable law.  Ground One is denied.

Ground Two: Trial Court overruling Petitioner's *Batson* Challenge

In Ground Two, Petitioner alleges the trial court erred in overruling his *Batson v. Kentucky*, 476 U.S. 86 (1987) challenge that the prosecution's peremptory strike of an African American venireperson was not race neutral.  The Missouri Supreme Court analyzed this claim:

> The only grounds for pretext raised by Tyrone below were that
> B.T. was stricken while a similarly situated Caucasian
> venireperson who asked a question about the death penalty, B.B.,
> was not stricken, and that the prosecutor mistakenly stated that
> B.T. had initiated the conversation about degrees of murder
> whereas he was in fact prompted to do so by the prosecutor. This

Court does not find the trial court's rejection of these allegations of pretext was clearly erroneous. While Tyrone is correct that both B.T. and B.B. asked facially similar questions in response to a query form the prosecutor, the content of their statements varied in substance. When the prosecutor asked the venirepersons whether they could follow the court's instructions on the difference between first- and second-degree murder, B.T. responded by asking, "...[W]hen you say degree, what do you mean by that, First Degree, Second Degree?" Not quite understanding the prosecutor's somewhat obscure initial response, B.T. asked him to clarify it, saying – "I mean, is that like more of a harsher sentence?" This evoked a more detailed response form the prosecutor.

Conversely, when asked whether he had any thoughts about the day before's questions, B.B. asked:
> Yesterday we were talking. And I'm not talking about presumption of innocence here or anything like that. But the State is not asking for the death penalty or it's been ruled out completely. And I'm trying, in my mind, to justify why if we determine that there was guilt in this case that we wouldn't be allowed to consider all possible punishment. Not that we would necessarily go for that, but why would we eliminate some of the punishment possibilities form the deliberation?

The prosecutor generally explained why the prosecutor might seek the death penalty in only certain types of murder cases and that the jury would not be involved in sentencing.

As is evident from the nature of B.T.'s and B.B.'s comments, the two are not comparable. While both showed some minor initiative by asking questions regarding punishment (albeit in both cases they did so in response to an invitation from the prosecutor to ask questions), B.T.'s comments showed confusion as to the difference between first-degree murder and lesser degrees of murder. While it is questionable whether this curiosity about the degrees of murder showed a tendency toward leniency as opposed to showing a proper desire to better understand the court's instructions, it is

>evident that B.B.'s question about the death penalty tended to show that he was interested in the higher degrees of murder. A reasonable prosecutor may have concluded from these facts that B.B. would be more favorable juror for the prosecution than would B.T. Apparently, the defense thought so also; it used one of its peremptory strikes to remove B.B. from the jury after the prosecutor struck B.T.
>
>Tyrone did not argue to the trial court that any of the other factors identified in the above cases were present here, and the record does not demonstrate the existence of any of those indicia of pretext. Therefore, nothing in the record shows the prosecutor used inappropriate or subjective grounds such as the exclude venireperson's demeanor, occupation as a postal worker or similar factors to strike B.T. or other venirepersons. Neither has any evidence been presented that the prosecutor had an inappropriate demeanor, questioned minorities differently than he did Caucasians or had a history of pretextual strikes. While the judge below did find that the prosecutor's strike of another venirepersons was pretextual in this case, the judge also found a strike by defense counsel to be pretextual, and defense counsel did not argue below, nor does he in this Court, that the prosecutor's strikes constituted a pattern of pretext or a ground for finding pretext as to B.T. This further shows that the trial court understood its obligation to disallow pretextual strikes but did not find the strike of B.T. to be pretextual. In addition, the defense did not claim below, and does not claim in this Court, that the prosecutor used a disproportionate number of strikes against minorities, engaged in mere tokenism or that other objective factors supporting pretext were present.
>
>In sum, for all of the reasons stated above, and giving appropriate deference to the trial judge's ability to judge the credibility of the prosecutor's reasons, the trial court did not err in finding that the strike was race-neutral in "light of the totality of the facts and circumstances." Parker, 836 S.W.2d at 939. This Court is not "left with the definite and firm conviction that a mistake has been made." McFadden II, 216 S.W.3d at 675.

(Respondent's Exhibit E, pp. 17-19).

The Court detailed its reasoning for affirming the trial court. This reasoning is consistent with the federal law of *Batson*.   The record supported the Court's finding that the reasons articulated by the prosecutor were not pretextual. Ground Two is denied.

Ground Three: Ineffective assistance of counsel for failure to present the testimony of Dr. Blansett

In Ground Three, Petitioner alleges that trial counsel was ineffective for failing to call Dr. Blansett to testify Petitioner suffered from a diminished capacity. As the record establishes, trial counsel was unaware of Dr. Blansett's opinions. She did not receive his report prior to trial. The Motion Court analyzed the record and determined that the evidence did not show trial counsel knew or should have known that Dr. Blansett's information would support Petitioner's defense.  Trial counsel cannot be held to be inefficient for failing to present testimony of which she had no knowledge due to no fault of her own.

Moreover, as the Motion Court reasonably determined, Petitioner cannot satisfy the prejudice prong of *Strickland*.

> Movant also failed to prove that Dr. Blansett's testimony
> provided a viable defense. The motion court did not believe that
> Movant suffered a brain injury during the fight that resulted in
> him being incapable of deliberation. The court noted that Movant's
> conduct did not necessarily indicate a mental disability or defect
> requiring an investigation of his mental capacity and found that
> the diminished capacity claim was due to "head trauma and
> injuries for which movant did not seek or receive any medical

> treatment." Thus, the motion court rejected Dr. Blansett's testimony that Movant did suffer a significant brain injury that prevented him from deliberating. Because the motion court was free to disbelieve Dr. Blansett's testimony and we defer to the motion court's superior opportunity to assess witness credibility, we defer to the motion court's credibility determination in rejecting Dr. Blansett's testimony that Movant had a brain injury which prevented him from deliberating. See Davis, 486 S.W.3d at 916 (rejecting a claim that counsel was ineffective for failing to present an expert's testimony that the defendant's capacity was affected by medication the defendant was taking because the motion court found the expert not credible). Thus, in finding that he expert's testimony would not have provided a viable defense even if it had been presented, the motion court did not err in denying Movant's motion for post-conviction relief claiming ineffective assistance of counsel.

(Respondent's Exhibit J, pp. 5-6). The Motion Court correctly applied the proper federal standard in its determination. The Motion Court's analysis was clearly a reasonable application of federal law.

Petitioner's Ground Three claim will be denied.

Ground Four: Ineffective assistance of counsel for failing to call Petitioner to testify at trial.

Petitioner did not brief this claim on post-conviction appeal. In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray v. Carrier*, 477 U.S. 478 (1986). The Petition contains nothing to demonstrate good cause for failing to brief this issue nor does the petition address any actual prejudice for the failure. Ground Four is denied as procedurally defaulted.

- 13 -

## Conclusion

Based upon the foregoing discussion and analysis, the Petition for Writ of Habeas Corpus is denied.

## Certificate of Appealability

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." R. Governing Section 2254 Cases in the U.S. Dist. Cts., R. 11. If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court should issue a certificate of appealability if the prisoner has shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*; see also *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (interpreting *Slack* in the following manner: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural

default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted").

For the reasons stated in this opinion, the Court finds that Petitioner's fourth claim is clearly procedurally defaulted. The Court also finds that the denial of Petitioner's other three claims are based on such a clear record and well-settled law that no reasonable jurists would debate that no constitutional right of Petitioner was denied. Therefore, no certificate of appealability will issue in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus, [Doc. No. 1], is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 20th day of September, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE